# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 00-31191
Summary Calendar

D.C. Docket No. 99-CV-2831-L

RODRIGO M SOLORZANO, SR

Plaintiff - Appellant

v.

SHELL CHEMICAL COMPANY

Defendant - Appellee



U. S. COURT OF APPEALS
FILED

MAY 1 8 2001

CHARLES R. FULBRUGE III
CLERK

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JUN 1 2 2001

LORETTA G. WHYTE
CLERK

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans.

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the
briefs on file.

It is ordered and adjudged that the judgment of the District
Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to
defenant-appellee the costs on appeal to be taxed by the Clerk
of this Court.

ISSUED AS MANDATE: JUN 1 1 2001

Fee
Process
X Dktd
CtRmDep
Doc.No. 56

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit

By
Deputy
New Orleans, Louisiana   JUN 1 1 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

MAY 1 8 2001

CHARLES R. FULBRUGE III
CLERK

No. 00-31191

Summary Calendar

RODRIGO M SOLORZANO, SR

      Plaintiff - Appellant

  v.

SHELL CHEMICAL COMPANY

      Defendant - Appellee

---

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 99-CV-2831-L

---

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

  Plaintiff-Appellant Rodrigo M. Solorzano, Sr., appearing pro se, appeals from the magistrate judge's grant of summary judgment in favor of Defendant-Appellee Shell Chemical Company on Solorzano's race and age discrimination claims. For the following reasons, we AFFIRM.

---

  [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL HISTORY

Rodrigo M. Solorzano, Sr.,[1] a fifty-four year old Hispanic male born in Nicaragua, began working as a laboratory technician at Shell Chemical Corporation's ("Shell") Taft Plant on July 10, 1989. He was terminated by Shell on December 14, 1998. According to Shell, Solorzano was selected for random drug testing in accordance with Shell's Substance Abuse Policy based on his holding a safety and environmentally sensitive job. Although Solorzano submitted to the test and signed a consent form acknowledging that he had submitted a fresh and unadulterated urine sample, Shell asserted that two independent labs and an independent expert determined that the sample was inconsistent with human urine. Based on this evidence, Shell stated that it terminated Solorzano for violation of Shell's Substance Abuse Policy and falsification of company records.

On September 15, 1999, Solorzano filed suit in federal court alleging race discrimination in violation of 42 U.S.C. § 1981 (1994) ("§ 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (1994), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (1999). Specifically, Solorzano alleged that he was subjected to a

---

[1] Solorzano appears pro se. We interpret briefs of pro se litigants liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

2

hostile work environment[2] and that he was denied promotions, improperly disciplined,[3] and ultimately terminated because of his race and age.

On January 4, 2000, the magistrate judge[4] issued an order (the "January 4 Order") scheduling a preliminary conference on January 13, 2000. Informed at the preliminary conference that the parties had not met to discuss discovery issues and had failed to file a discovery plan as required by Federal Rule of Civil Procedure 26(f) ("Rule 26(f)"), the magistrate judge ordered the parties to conduct a telephone conference on January 18, 2000. The parties conferred on January 18, but Shell declined to submit a Rule 26(f) discovery plan because Rule 26(f) required the plan to be submitted prior to the scheduling conference.

On February 12, 2000, Solorzano submitted his first set of

---

[2]   Solorzano alleged a hostile work environment based on being subjected to frequent and repeated "ethnic/racial/national origin gibes and slurs" by coworkers. He contended that these slurs were often made in the presence of supervisory and management personnel and that he had made supervisory and management personnel aware of the comments on at least three occasions.

[3]   Solorzano asserted he was denied promotion to the positions of Documentation Specialist, Trainer, Team Coach, and Process Specialist.

[4]   This case was automatically referred to a magistrate judge on September 9, 1999 and the parties consented to have a magistrate judge conduct all proceedings in the case in accordance with the provisions of 28 U.S.C. § 636(c) on January 25, 2000.

3

written interrogatories and discovery requests, in response to which Shell timely provided some 3159 pages of documents. However, Shell objected to fourteen of the discovery requests and failed to respond to Solorzano's interrogatories. The parties conferred on March 16, regarding the objections to the discovery documents, but were unable to come to any agreement. On April 17, Solorzano filed a Motion to Compel Production of Documents and Answers to Interrogatories (the "Motion to Compel"). On May 3, the Motion to Compel was granted in part and denied in part (the "May 3 Order"). The magistrate judge denied Solorzano's Motion to Compel as it related to production of documents; however, the magistrate judge stated that Shell was required to supply all responsive materials "concerning its policies and programs related to plaintiff's job position <u>at the Taft plant for the period 1996-98</u>." Furthermore, the magistrate judge granted Solorzano's Motion to Compel insofar as it concerned the interrogatories, stating that "[r]esponses must be provided . . . within ten (10) days of entry of this order." Finally, the magistrate judge ordered the parties to meet within ten days to clarify the document production and to resolve discovery issues, which meeting occurred on May 12, 2000.[5]

---

[5]    Shell notes that on April 25, 2000, prior to the issuance of the May 3 Order, it responded to Solorzano's first two interrogatories and objected to the third. The magistrate judge appears not to have been aware of this action when he issued his May 3 Order.

4

On June 13, 2000, Solorzano filed three additional motions, including a Motion for Court-Supervised Discovery Conference (the "Motion for Court-Supervised Discovery").  While the magistrate judge denied the Motion for Court-Supervised Discovery insofar as it sought to require a Rule 26(f) plan, the magistrate judge agreed to hold a court-supervised discovery conference. According to the order issued by the magistrate judge following the conference, several of Solorzano's supplemental requests had been mooted or satisfied.  However, there still remained several requests to which the magistrate judge ordered Shell to respond, either by stating no documents existed for the request, by providing the documents, by objecting to the request, or by seeking a protective order.  Shell filed a Motion for a Protective Order on July 20, 2000, and provided the documents to the magistrate judge for in camera review.

On July 28, 2000, while its Motion for a Protective Order was pending, Shell filed a Motion for Summary Judgment.  The magistrate judge granted the motion and dismissed Solorzano's claims with prejudice.  Analyzing Solorzano's failure-to-promote and termination claims[6] under the burden-shifting framework set

---

[6]    The magistrate judge also dismissed Solorzano's state law defamation claim, finding the claim, which was subject to a one-year limitations period, prescribed.  Additionally, the magistrate judge found Solorzano's ADEA claim and several of his failure-to-promote claims barred by his failure to file an EEOC charge within 300 days of the challenged actions, thereby exhausting his administrative remedies.  Solorzano has not

out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the

magistrate judge found that, even assuming that Solorzano could

establish a prima facie showing of national origin

discrimination,[7] Shell had articulated legitimate,

nondiscriminatory reasons for its actions.  The magistrate judge

found that, apart from his subjective beliefs and unrelated

ethnically based comments by his coworkers, Solorzano presented

no evidence from which a reasonable factfinder could infer that

Shell's asserted reasons were pretextual, and thus summary

judgment was appropriate.  Similarly, the magistrate judge

concluded that summary judgment was appropriate on Solorzano's

claim of hostile work environment because Solorzano failed to

---

appealed the magistrate judge's grant of summary judgment on
these issues, and therefore, they are waived.  <u>See</u> <u>Evergreen
Presbyterian Ministries Inc. v. Hood</u>, 235 F.3d 908, 918 (5th Cir.
2000).  We do note, however, that these time-barred acts may be
used as evidence of discriminatory intent in later actions.  <u>See
Ray v. Tandem Computers, Inc.</u>, 63 F.3d 429, 434 n.12 (5th Cir.
1995) (citing <u>Cortes v. Maxus Exploration Co.</u>, 977 F.2d 195 (5th
Cir. 1992) (listing cases)).

[7]    Solorzano asserts that his complaint alleges race
discrimination, not national origin discrimination.  We note
that, in his EEOC filing he claimed national origin
discrimination.  Because "[a] Title VII cause of action may be
based, not only upon the specific complaints made by the
employee's initial EEOC charge, but also upon any kind of
discrimination like or related to the charge's allegations,
limited only by the scope of the EEOC investigation that could
reasonably be expected to grow out of the initial charges of
discrimination," we will consider both his national origin and
racial discrimination claims.  <u>See</u> <u>Dollis v. Rubin</u>, 77 F.3d 777,
781 (5th Cir. 1995) (quoting <u>Fine v. GAF Chem. Corp.</u>, 995 F.2d
576, 578 (5th Cir. 1993)).

6

demonstrate any genuine issue  of material fact that the slurs were motivated by ethnic animus or that his co-workers' ethnic slurs were sufficiently frequent or severe.  Therefore, the magistrate judge dismissed Solorzano's claims with prejudice.

On August 14, 2000, the Motion for a Protective Order was granted in part and denied in part.  Both Shell and Solorzano filed Motions for Reconsideration, which were denied.

Solorzano timely appeals.

## II. STANDARD OF REVIEW

"We review de novo questions of law such as a district court's interpretation of the Federal Rules of Civil Procedure." Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 827 (5th Cir. 1996).  We review the trial court's evidentiary rulings under an abuse of discretion standard.  See Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 667 (5th Cir. 1999).  The district court's disposition of contested discovery and procedural matters is also reviewed under an abuse of discretion standard.  See Atkinson v. Denton Publ'q Co., 84 F.3d 144, 147 (5th Cir. 1996).

We review de novo a district court's grant of summary judgment.  See Evans v. City of Bishop, 238 F.3d 586, 588 (5th Cir. 2000).  Summary judgment is appropriate when the record shows "'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

7

law.'"  <u>Allen v. Rapides Parish Sch. Bd.</u>, 204 F.3d 619, 621 (5th
Cir. 2000) (quoting <u>Taylor v. Principal Fin. Group, Inc.</u>, 93 F.3d
155, 161 (5th Cir. 1996)).  "'If the moving party meets the
initial burden of showing there is no genuine issue of material
fact, the burden shifts to the nonmoving party to produce
evidence or designate specific facts showing the existence of a
genuine issue for trial.'"  <u>Id.</u> (quoting <u>Taylor</u>, 93 F.3d at 161).
"[W]e must view all facts in the light most favorable to the
nonmovant."  <u>Cardinal Towing & Auto Repair, Inc. v. City of
Bedford, Tex.</u>, 180 F.3d 686, 690 (5th Cir. 1999).


### III. RULE 26(F) CONFERENCE

As an initial matter, Solorzano raises a challenge to the
magistrate judge's governing of the pretrial discovery process,
namely his failure to order the parties to hold a discovery
conference and to file a discovery plan as required by Rule
26(f).  Rule 26(f)[8] requires that the parties meet at least

---

[8]  Federal Rule of Civil Procedure 26(f) provides:

Except in actions exempted by local rule or when
otherwise ordered, the parties shall, as soon as
practicable and in any event at least 14 days before a
scheduling conference is held or a scheduling order is
due under Rule 16(b), meet to discuss the nature and
basis of their claims and defenses and the
possibilities for a prompt settlement or resolution of
the case, to make or arrange for the disclosures
required by subdivision (a)(1), and to develop a
proposed discovery plan.  The plan shall indicate the
parties' views and proposals concerning:

fourteen days prior to the scheduling conference to discuss several topics, including discovery, and to develop a discovery plan, which must be submitted to the court. Solorzano argues that the magistrate judge's January 4 Order scheduling the preliminary conference for January 13 effectively made it impossible for the parties to arrange a discovery conference as required by Rule 26(f). Furthermore, when Solorzano requested such a discovery conference in his Motion for Court-Supervised Discovery, the magistrate judge denied the motion insofar as it

---

> (1) what changes should be made in the timing, form, or requirement for disclosures under subdivision (a) or local rule, including a statement as to when disclosures under subdivision (a)(1) were made or will be made;
>
> (2) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues;
>
> (3) what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and
>
> (4) any other orders that should be entered by the court under subdivision (c) or under Rule 16(b) and (c).
>
> The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging and being present or represented at the meeting, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 10 days after the meeting a written report outlining the plan.

FED. R. CIV. P. 26(f).

9

sought to require the Rule 26(f) plan, stating that "requiring a plan of the type envisioned by Rule 26(f) would be a vain and useless act."  Solorzano asserts that these acts frustrated his procedural right to have a Rule 26(f) discovery conference and plan, which would have prevented many of the later discovery disputes.

Shell asserts that Rule 26(f) provides latitude to individual courts to modify the rule's requirements. Furthermore, as the magistrate judge was actively involved in the discovery process and responsive to Solorzano's motions and concerns, Shell argues that Solorzano cannot point to any prejudice he suffered from the lack of the Rule 26(f) discovery conference and plan. For these reasons, Shell contends that the magistrate judge's actions do not constitute an abuse of discretion.

We do not find either the magistrate judge's order scheduling the preliminary conference or his order denying in part Solorzano's Motion for Court-Supervised Discovery to be an abuse of discretion.  See Atkinson v. Denton Publ'g Co., 84 F.3d 144, 147 (5th Cir. 1996).  Although Rule 26(f) requires the parties to meet at least fourteen days prior to the scheduling conference to formulate a discovery plan, nothing in Rule 26(f) requires the parties to wait until the court has set a date for the scheduling conference before arranging such a meeting.

10

Additionally, Rule 26(f), by its terms, gives the district court discretion to exempt particular cases from complying with the requirements of Rule 26(f), providing that the parties shall have the discovery conference "[e]xcept . . . when otherwise ordered." FED. R. CIV. P. 26(f). The magistrate judge exercised his discretion, after having discussed the issue with the parties at the hearing, when he determined that the filing of a discovery plan would not be helpful.

Further, we need not decide if the magistrate judge's orders were in error, because even assuming they were, such error is subject to harmless error review. See Union City Barge Line, Inc. v. Union Carbide Corp., 823 F.2d 129, 136 (5th Cir. 1987).[9] We find that because of the active role the magistrate judge played in overseeing discovery in this matter, any error that may have occurred from the magistrate judge's failure to order the parties to hold a Rule 26(f) discovery conference was harmless. Informed of the parties' failure to hold a Rule 26(f) conference at the preliminary conference held, the magistrate judge ordered

---

[9]     Union City was decided under a prior version of Rule 26(f), which provided: "The court shall . . . hold a conference on the subject of discovery upon motion by the attorney." Union City, 823 F.2d at 135 (alteration in original). This court found the failure of the district court to hold the mandatory conference to be error, but only harmless error. See id. at 136. Although the provisions relating to a conference with the court are removed from subdivision (f), "[t]his change does not signal any lessening of the importance of judicial supervision." FED. R. CIV. P. 26(f) advisory committee notes 1993 amends.

11

the parties to hold a telephone discovery conference.  The
parties were unable to reach agreement on the discovery issues
during that conference, ultimately leading to Solorzano's filing
his Motion to Compel.  In his May 3 Order, the magistrate judge
ordered the parties to meet in person to discuss document ·
production and discovery.  The parties obviously failed to arrive
at a mutually agreeable outcome, as evidenced by Solorzano's
filing of his three additional motions.  The magistrate judge
granted Solorzano's request for a court-supervised discovery
conference, issuing several orders to Shell regarding discovery.
However, after hearing from the parties, the magistrate judge
also determined that requiring the parties to file a Rule 26(f)
plan would be useless.

Given the magistrate judge's active role in the discovery
process and the inability of the parties to resolve their
discovery issues, we find the magistrate judge's failure to order
the parties to file a Rule 26(f) plan, if error at all, was
harmless.

## IV. OBJECTION TO THE INTERROGATORY

As another threshold issue, Solorzano challenges the
magistrate judge's management of the discovery process in his
decision to sustain Shell's objection to one of Solorzano's
interrogatories.  Solorzano contends that the magistrate judge

12

erred in sustaining Shell's objection to Interrogatory No. 3 because Shell's objection was in contravention of the magistrate judge's May 3 Order as well as untimely.  Shell replies that the magistrate judge has the discretion to permit untimely objections for good cause and that it complied with the magistrate judge's May 3 Order.

We do not find the magistrate judge's decision to sustain Shell's objection to Interrogatory No. 3 to be an abuse of discretion.  Solorzano submitted his first set of interrogatories and document requests to Shell on February 12, 2000.  On March 10, 2000, Shell responded to Solorzano's request for production of documents either by submitting material or by objecting to the request.  Although Shell failed to respond to Solorzano's interrogatories, in its reply to Solorzano's Motion to Compel, Shell informed the magistrate judge that its failure to respond to the interrogatories was an oversight.  Shell informed the magistrate judge that it would provide a response as soon as possible, noting, however, that it intended to object to Interrogatory No. 3.  Further, on April 25, 2000, eight days after Solorzano filed his Motion to Compel, Shell in fact answered Interrogatories No. 1 and 2, and objected to Interrogatory No. 3.

In his May 3 Order, the magistrate judge stated: "The motion is granted as to the interrogatories, which were not answered.

13

Responses must be provided to these interrogatories within ten
(10) days of entry of this order." As Solorzano admits, a
response to an interrogatory can mean either an objection or an
answer. The magistrate judge could have ordered Shell to answer
the interrogatories but, with knowledge that Shell intended to
object to Interrogatory No. 3, the magistrate judge instructed
Shell to respond to the interrogatories. Given the wording of
the magistrate judge's order, we do not find that Shell's
objection to Interrogatory No. 3 constituted disregard of that
order.

Additionally, we cannot agree that the magistrate judge's
decision to sustain Shell's untimely objection to Interrogatory
No. 3 was an abuse of discretion. Although Federal Rule of Civil
Procedure 33(b) states that objections not served within 30 days
after the service of the interrogatories shall be deemed waived,
the Rule gives the district court discretion to excuse the
untimeliness for good cause. See FED. R. CIV. P. 33(b)(3), (4).
Shell had responded to Solorzano's request for production of
documents within the proper thirty-day window. In its reply to
Solorzano's Motion to Compel, Shell informed the magistrate judge
that its failure to respond to the interrogatories was an
oversight, and Shell promptly remedied that oversight. Given
these facts, we cannot find that the magistrate judge's decision
to sustain Shell's untimely objection was an abuse of discretion.

14

### V. SUMMARY JUDGMENT

Solorzano contends that the magistrate judge erred in granting summary judgment in favor of Shell on his Title VII claims of discriminatory failure to promote, unequal disciplinary treatment (including termination), and hostile work environment. As we explain below, we find that the magistrate judge properly granted summary judgment in favor of Shell.

#### A. Analytical Framework

Claims of racial discrimination supported by circumstantial evidence are analyzed under the framework set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). "First, the plaintiff must establish a prima facie case of discrimination." <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000). Once the plaintiff satisfies this prima facie burden, the burden shifts to the defendant to produce a "legitimate, nondiscriminatory reason for its decision." <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000). "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." <u>Id.</u>

"If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory,

15

'the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the factfinder must decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination].'" Evans v. City of Houston, No. 99-20778, 2001 WL 277839, at *3 (5th Cir. Mar. 21, 2001) (alterations in original) (some internal quotations omitted) (quoting Russell, 235 F.3d at 222). "In the context of a claim of discrimination, a plaintiff must adduce evidence that the justification was a pretext for racial and age discrimination." Id. at *4. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 120 S. Ct. at 2109. A showing of pretext by the plaintiff will not always be sufficient to infer discrimination. For example, "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," the employer would still be entitled to summary judgment. See id.

    With this framework in mind, we proceed to analyze Solorzano's Title VII claims.

16

## B. Discriminatory Failure to Promote

Solorzano claims that Shell discriminated against him by failing to promote him to the position of Taft Process Specialist in 1998[10] because of his race or national origin.  To establish a prima facie case of discriminatory failure to promote, "a plaintiff must demonstrate that (1) [he] is a member of a protected class; (2) [he] sought and was qualified for an available employment position; (3) [he] was rejected for that position; and (4) the employer continued to seek applicants with the plaintiff's qualifications."  Scales v. Slater, 181 F.3d 703, 709 (5th Cir. 1999).  For purposes of this opinion, we will assume without deciding, as did the magistrate judge, that Solorzano established a prima facie case of employment discrimination.[11]

Shell articulated a nondiscriminatory reason for its failure

---

[10]   Solorzano also asserts that Shell discriminated against him by failing to promote him to the positions of Documentation Specialist, Trainer, and Team Coach.  As discussed supra in note 6, although these claims are barred because Solorzano failed to file an EEOC charge within 300 days of the incidents, the acts may be used as evidence of discriminatory intent in later actions.

[11]   Solorzano is a member of a protected class and he applied for the Process Specialist position.  Further, as one of the four finalists for the position, he was likely qualified for the position, but he was rejected in favor of an individual outside the protected class.  Therefore, it appears that Solorzano establishes his prima facie case.

to promote Solorzano, i.e., that he was not the top scorer at the end of the selection process.  Solorzano achieved the highest score of any candidate in the written examination, but was the least successful candidate during the interview portion of the process.  His combined score placed him third out of the four candidates who had advanced to the interview stage of the process.  The interviews were conducted by a panel of five individuals consisting of three white males and two black males. Notes from a discussion Solorzano had with his supervisor after finding out he had not received the promotion (the "Post-Interview Notes") indicate that Solorzano had been given low scores by the panelists, not because of the answers he had given during the interview, but because, during their time working with him over the years, the panelists had a negative impression of him and believed he would not be successful in a leadership role. We find that Shell articulated an adequate nondiscriminatory reason for its failure to promote Solorzano.

Therefore, the mandatory inference of discrimination created by Solorzano's prima facie case disappears, and the question becomes whether Solorzano has provided sufficient summary judgment evidence to prove that Shell discriminated against him based on race or national origin.  See Evans, 2001 WL 277839, at *4.  We find that Solorzano has failed to present sufficient evidence to create a jury issue that Shell's asserted reason for

18

failing to promote him to the Process Specialist position is pretextual.

To establish pretext, Solorzano contends that Shell promoted individuals less qualified than he and that the criteria used in the selection process was subjective and subject to bias. The only evidence submitted by Solorzano to establish that the individuals promoted by Shell were less qualified was Solorzano's own affidavit and the Post-Interview Notes. This evidence is insufficient to create a jury question regarding whether Shell's proffered justification is pretextual.

To survive summary judgment, Solorzano must offer enough evidence to raise a question of material fact regarding whether Shell's articulated reason for failing to promote him (i.e., that he was not the highest scorer in the selection process) was a pretext for race or national origin discrimination. For example, in <u>Blow v. City of San Antonio, Texas</u>, 236 F.3d 293 (5th Cir. 2001), this court found that the plaintiff, an African-American woman, presented sufficient evidence to survive summary judgment. <u>See</u> <u>id.</u> at 298. To establish pretext, the plaintiff submitted evidence that the defendant deliberately failed to publicize the job opening, concealed the job opening from the plaintiff, and after having filled the opening, suggested to the plaintiff that it was a good time to submit her application. <u>See</u> <u>id.</u> at 297-98. That evidence was sufficient to create a material issue of

19

disputed fact as to whether the defendant's asserted reason was false. See id. at 298.

By contrast, Solorzano has presented no evidence beyond his subjective belief that he was more qualified for the position to demonstrate that the legitimate reason for Shell's failure to promote him to the position of Process Specialist was a pretext for race or national origin discrimination. An individual's subjective belief that he is more qualified for the position is insufficient to establish a material question of fact. See Nicols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996). In fact, the evidence submitted by Solorzano confirms that he was unsuccessful in the interview process because of the panel's perception of him as a troublemaker with a bad reputation in the company. The Post-Interview Notes and his affidavit confirm that his low scores during the interview were based on the panel's negative perception of his interaction with his coworkers and his perceived lack of leadership ability. The only evidence that could be construed as evidence that Shell's articulated reason was a pretext for race or national origin discrimination were the ethnic slurs made by coworkers.[12]

---

[12]  Although we may consider Shell's previous failures to promote Solorzano, see supra note 6, Solorzano has again failed to present any evidence, other than his subjective belief regarding his superior qualifications, that Shell's asserted reasons for failing to promote him on these prior occasions were a pretext for racial or national origin discrimination.

20

Although our stray remarks jurisprudence must be viewed with caution in light of <u>Reeves</u>, <u>see</u> <u>Evans v. City of Bishop</u>, 238 F.3d 586, 591 (5th Cir. 2000); <u>Russell</u>, 235 F.3d at 229, because the remarks were made by coworkers who had no influence on the promotion decision and were unrelated to the employment decision, we do not find that they create an issue of fact regarding whether Shell's asserted reason was pretextual.  <u>Cf.</u> <u>infra</u> Part V.D.

As Solorzano has failed to submit sufficient evidence to create a material question of fact as to whether Shell's asserted reason for its failure to promote him to the position of Process Specialist was a pretext for race discrimination, we agree with the magistrate judge that summary judgment was properly granted to Shell in this regard.

### C. Unequal Disciplinary Treatment

Solorzano alleges that his termination was discriminatory under Title VII in that it constituted an unfair and unequal application of discipline.  Shell responds that Solorzano was terminated consistent with its internal policy regarding drug testing.  Specifically, Shell followed its policy in terminating Solorzano when two independent labs and an independent expert concluded that the urine sample Solorzano had submitted pursuant to a random drug test was inconsistent with human urine,

constituting a failure to cooperate with a search and
falsification of company records.

"In work-rule violation cases, a Title VII plaintiff may
establish a prima facie case by showing 'either that he did not
violate the rule or that, if he did, white employees who engaged
in similar acts were not punished similarly'." <u>Mayberry v.
Vought Aircraft Co.</u>, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting
<u>Green v. Armstrong Rubber Co.</u>, 612 F.2d 967, 968 (5th Cir.
1980)); <u>see also</u> <u>Simmons v. Rothe Devel., Inc.</u>, 952 F. Supp. 486,
490 (S.D. Tex. 1997); <u>cf.</u> <u>Lindsey v. Prive Corp.</u>, 987 F.2d 324,
328 (5th Cir. 1993) (finding summary judgment inappropriate for
ADEA claim when younger employees were not similarly disciplined
and company policy dictated written warnings before discharge).
Furthermore, to demonstrate that white employees were not
similarly disciplined, the plaintiff "must show that white
employees were treated differently under circumstances 'nearly
identical' to his." <u>Mayberry</u>, 55 F.3d at 1090.

We find that the magistrate judge properly granted summary
judgment in favor of Shell. Solorzano argues that Shell's
violation of its own policies and its prior discriminatory
treatment of him were sufficient to create a jury question as to
whether Shell's asserted reason for his termination was
pretextual. Evidence of violations of internal policy may be
considered in determining whether summary judgment is

22

appropriate.  See Lindsey, 987 F.2d at 328.  However, Solorzano

has failed to show that Shell, in fact, violated its internal

policy.

While the policy states that employees who fail the drug

test may be given treatment rather than be terminated, it does

not state that the same consideration will be given to employees

who fail to submit an actual sample of their own urine as

required by the policy.  In fact, it states that failure to

cooperate with the policy, including failure to cooperate with a

search, can result in termination.

Solorzano's additional evidence of prior discipline

situations and violations of Shell's internal policy fail for

similar reasons.  He has submitted no evidence that similarly

situated white employees were treated differently.[13]  Further,

_____

[13]  Solorzano argues that he sought records of two similarly
situated white employees to which access was denied when the
magistrate judge granted Shell's Motion for a Protective Order.
However, the magistrate judge found the employees not to be
similarly situated.  The first employee had tested positive for
drugs and was given an opportunity to undergo rehabilitation.
The second employee had been given a one-day "Decision Making
Leave" for falsifying a log entry.  Both events had occurred more
than five years previously.  We do not find the magistrate
judge's evidentiary ruling to be an abuse of discretion.
    Similarly, Solorzano alleges that the magistrate judge
improperly limited his scope of discovery to the Shell Taft
Plant, preventing him from obtaining reliable statistical
evidence of discrimination.  Although Solorzano correctly cites
Duke v. University of Texas, 729 F.2d 994, 997 (5th Cir. 1984),
as holding that the district court's failure to allow the
plaintiff access to promotion and pay records for the entire
university was an abuse of discretion, we do not find that case
to be controlling.  First, in Duke, this court noted that it was

Solorzano has submitted no evidence that Shell's asserted reasons for his termination were a pretext for race or national origin discrimination.

The magistrate judge did not err in granting summary judgment in favor of Shell on Solorzano's claim of discriminatory discipline.

### D. Hostile Work Environment

To survive summary judgment on a claim of hostile work environment, Solorzano must create a fact issue on each of the following elements: "(1) racially discriminatory intimidation, ridicule, and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment."  Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000).

> Whether an environment is "hostile" or "abusive" is determined by looking at all the circumstances, including the frequency of the discriminatory conduct,

---

"significant that the record reflects that the discovery request was based on more than a fanciful hope of counsel."  Id. at 996. In contrast, Solorzano has presented no evidence that the alleged discrimination was company wide.  Second, allowing the plaintiff access to the promotion and pay records for the university is a far cry from allowing Solorzano access to all of the employment databases of Shell, "its parents, predecessors, subsidiaries, and affiliates, each of its present and former officers, employees, agents, representatives, and attorneys, and each person acting or purporting to act on its behalf."  As Solorzano's request was overbroad in scope, the magistrate judge properly limited the contested discovery to the relevant period of time at the Shell Taft Plant.

24

its severity, whether it is physically threatening or
humiliating, or a mere offensive utterance, and whether
it unreasonably interferes with an employee's work
performance. To be actionable, the challenged conduct
must be both objectively offensive, meaning that a
reasonable person would find it hostile and abusive,
and subjectively offensive, meaning that the victim
perceived it to be so.

Shepard v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th
Cir. 1999) (citations omitted) (emphasis added).

Solorzano contends that he was subject to constant and
pervasive derogatory name-calling during the nine years he worked
at Shell that cumulatively impacted his situation at work.
However, in his affidavit, Solorzano states: "I felt that the
people making the comments or calling me names were not motivated
by ethnic animus, but were at most guilty of crass humor and
behavior." Given that Solorzano, himself, did not believe that
the comments were racially motivated, we find that Solorzano
fails to create a fact issue as to the elements of a hostile work
environment claim. Solorzano's "perception of his environment is
a significant factor; whether discrimination exists is, by its
very nature, often a subjective inquiry." Vaughn v. Pool
Offshore Co., 683 F.2d 922, 925 (5th Cir. 1982). The magistrate
judge did not err in granting summary judgment in favor of Shell
on Solorzano's hostile work environment claim.

### VI. Section 1981 Claim

Finally, Solorzano claims that the magistrate judge's

25

failure to address his § 1981 claims constitutes reversible error. The magistrate judge dismissed all of Solorzano's claims with prejudice, although he did not expressly address Solorzano's § 1981 claim. We note, however, that "[c]laims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000). As discussed supra, Solorzano had presented insufficient evidence on his Title VII claims to create a question of material fact for the jury. We find, therefore, that despite the magistrate judge's failure to explicitly address Solorzano's § 1981 claim, the omission does not warrant a remand or reversal of the grant of summary judgment. As we find that summary judgment was appropriately granted in favor of Shell on the Title VII claims, we also find summary judgment appropriate on the § 1981 claims.

### VII. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.